IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action Number: 2016-cv-01250-WJM-CBS

MAKEEN INVESTMENT GROUP, LLC, a Colorado limited liability company,
AKEEM MAKEEN and KEVIN JOHNSTON,

      Plaintiffs,

vs.

WOODSTREAM FALLS CONDOMINIUM ASSOCIATION, INC., a Colorado non-
profit corporation, CHARLENE HUNTER AND HORACE A LOWE,

      Defendants.

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

---

**COMES NOW** the Plaintiffs, Akeem Makeen and Kevin Johnston, appearing *pro se*, hereby files their first amended civil action against Defendants Woodstream Falls Condominium Association, Inc. and Charlene Hunter, to add party Horace A. Lowe and claim of Civil Conspiracy for violations of the Civil Rights Act 42 U.S.C. § 1981, 42 U.S. Code § 1982 and the Eighth and Fourteenth Amendments to the United States Constitution.  In addition, Plaintiffs bring a supplemental state law claim arising from the same facts.  Plaintiffs complain and allege as follows:

### I.      PARTIES, JURISDICTION AND VENUE

1.     That Plaintiff, Makeen Investment Group, LLC (hereinafter referred to as "MIG"), has been and is a Colorado limited liability company that at all relevant times was situated within the City and County of Denver, State of Colorado, with its principal place of business located at 3312 South Tulare Circle, Denver, Colorado  80231.

2.     That Plaintiff, Akeem Makeen ("Makeen"), has been and is an individual, who at all relevant times resided in the City and County of Denver, State of Colorado, with a mailing address of 3312 South Tulare Circle, Denver, Colorado 80231.  Makeen is also the registered agent for MIG.

3.     That Plaintiff, Kevin Johnston ("Johnston"), has been and is an individual, who at all relevant times resided in the City and County of Denver, State of Colorado, with a mailing address of P.O. Box 370821, Denver, Colorado  80237.

4.     Shigodta Freeman is a member of MIG and is a citizen of the United States and resident of the State of Georgia.

5.     That Defendant, Woodstream Falls Condominium Association, Inc. ("WFCA"), has been and is a non-profit corporation organized and existing under the laws the State of Colorado.  It is a homeowner's association that at all relevant times was situated with the City and County of Denver, State of

Colorado, with its principal place of business located at 9700 East Iliff Avenue, Denver, Colorado 80231.

6.     That Defendant, Charlene Hunter, has been and is an individual, who at all relevant times was employed in the City and County of Denver, State of Colorado, with a mailing address of 1547 Gaylord Street, Suite 206, Denver, Colorado 80206 (hereinafter referred to as "Hunter").   Hunter is engaged in the business of a practicing attorney.   At all relevant times, Hunter is also the attorney of record for WFCA.

7.     That Defendant, Horace A. Lowe has been and is an individual, who at all relevant times live in the State of Colorado, with a mailing address of 13721 E. Rice Pl., Ste. 106 Aurora, Colorado 80015 (hereinafter referred to as "Lowe").   Lowe is engaged in the business of a practicing attorney.

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.    Venue is proper in the District of Colorado, pursuant to 28 U.S.C. § 1391, because all of the events or omissions giving rise to Plaintiffs' claims against Defendants occurred in this district.

10.  This Court has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367, as such claims are related to the claims in which this Court has original jurisdiction; forming part of the same case or controversy under Article III of the U.S. Constitution.

## II.     INTRODUCTION

Defendants have filed illegal notices of lis pendens against a number of properties belonging to Plaintiffs, in which it does not claim or allege any ownership or interest rights.   Instead, Defendants actions are specifically intended to vex and annoy Plaintiffs and to prevent them from selling or otherwise enjoying the free use of those properties.

Hunter and Lowe have colluded to engage in the collective objectives of (a) extracting underserved money and real property from Makeen, MIG, and Johnston (b) and causing Makeen, MIG, and Johnston undue and undeserved financial, physical and emotional harm.

The filing of the illegal notices of lis pendens is just one more showing of Defendants practice of retaliation against Plaintiffs based on religion, race, and/or their association with other owners and/or to advocacy for other owners all in violation of the Constitution of the United States and Colorado Constitution.  Defendants have maintained a practice of arbitrarily and capriciously using the legal system to harass and intimidate thereby

creating a hostile living environment and interfered with MIG and Johnston's ownership experience and their right to enjoy the benefits, privileges, terms, and conditions of their contract with WFCA.

In 2014, MIG purchased properties in WFCA and by accepting deed into WFCA, MIG and Johnston became members forming the contract between the parties, See sections 11 and 15 of the Declaration.   The Declaration requires that each member comply strictly with the Declaration section 18, and that all members are required to make monthly common expense assessments otherwise known as HOA monthly dues at section 21. If a member fails to make those monthly dues section 21 provides the procedure to be followed for enforcement and collection. It further provides that each owner by acceptance of the Deed or other instrument of conveyance in regard to any Condominium Unit within the project shall signify such grantee's waiver of the Homestead right granted in said Section of the Colorado statutes. At no time does the contract vest any ownership right or interest in the owners unit to WFCA.

The contract between the parties only allowed Defendants to file a lien and/or foreclosure against MIG and Johnston properties in WFCA not other HOA community, additionally since the creation of WFCA in 1978 they never have filed a lis pendens against any other owner for alleged past

due HOA fees or on any owner where they had a judgment for monies.  In the case of Woodstream Falls Condominium Association, Inc. v. Makeen, Denver District Court, Case No. 2015CV030561 ("2015CV030561"), WFCA filed a civil action alleging past HOA dues against the Plaintiffs, later amended it to add a claim of Breach of Fiduciary Duty and Fraud but never adding a claim of fraudulent conveyance.  Defendants filed the notices of lis pendens as a specific intent to vex, frustrate and harass Plaintiffs and to interfere in sale of their properties, wherein WFCA alleges in 2015CV030561 that Plaintiffs owe past HOA dues in the amount of $7,250.02 together with attorney fees and costs, yet they have placed invalid notices of lis pendens on over a million dollars in properties.  Additionally WFCA does not have standing to file any notices of lis pendens. Plaintiffs seek compensatory, declaratory and injunctive relief, preliminary and permanent injunctive relief, and damages pursuant to Civil Rights Act.

### III.       STATEMENT OF FACTS

11.    WFCA filed its Articles of Incorporation with the City and County of Denver Clerk and Recorder's office on April 12, 1978, which gave membership into the corporation at Article V, Section 1, which states:

> This Corporation shall be a membership corporation without certificates or shares of stock.  There shall be one class of membership, and there shall be one membership in the corporation for each condominium unit, as defined in the Declaration and supplements thereto.  The owner or owners

of a condominium shall hold and share the membership related to that condominium unit in the same proportionate interest and by the same type of tenancy in which the title to the condominium unit is held, provided, always that there shall be only one membership per condominium unit. No person or entity other than an owner of a condominium unit may be a member of the Corporation.

12.   WFCA is a nonprofit corporation and would lose their nonprofit filing status if they had a property interest in the Plaintiffs' properties.

13.   The Condominium Declaration for Woodstream Falls ("Declaration") was recorded with the Denver Clerk and Recorders office on April 13, 1978 at 1638-568. See section 2(2)(h) states:

> "Association of Unit Owners" or "Association" means the Association formed as a Colorado not-for-profit corporation bearing the name of Woodstream Falls Condominium Association, Inc., the Articles of Incorporation and Bylaws of which shall govern the administration of this condominium project, and the members of which Association shall be all of Owners of the Condominium Units.

14.   Pursuant to the enacted Declaration at Section 11, it binds the parties to the terms of the rules and regulations when they accept the deed or other instrument of conveyance or assignment which states in part:

> Each Owner, by acceptance of his deed or other instrument of conveyance or assignment, agrees to be bound by any such adopted rules and regulations.

15.   Pursuant to the enacted Declaration at Section 15(a):

> The interests of all Owners of Condominium Units shall be governed and administered by the Articles of Incorporation and By-laws of the Woodstream Falls Condominium Association, Inc. An Owner of a Condominium Unit upon becoming Owner, shall be a member of the

> Association and shall remain a member for the period of his ownership.

16.     Pursuant to the enacted Declaration at Section 18, it requires all owners to comply strictly with Declaration and provides that a aggrieved owner may maintain a civil action against WFCA for failure to comply with the Declaration, and for reimbursement of attorney fees.

17.     The Declaration gives Plaintiffs the authority to seek damages or injunctive relief or both when a member fails to comply strictly with any provision of the bylaws.

18.     That on March 10, 2010, the Honorable Judge Sheila A. Rappaport, held that a contract existed between the parties in the matter of Makeen v. Woodstream Falls Condominium Association, Denver District Court, Case No. 2009CV9497.

19.     On February 18, 2015 WFCA brought civil action against Makeen, MIG and Johnston for failure to pay HOA dues in 2015CV030561 alleging $17,050.65 in past HOA dues.

20.     That on March 24, 2015, WFCA filed their notice of reduction in amount claimed from $17,050.65 to $7,250.02 together with attorney fees and costs.

21.     That on April 23, 2015 WFCA filed their first amended complaint to now assert claims of Breach of Contract, fraud and Breach of Fiduciary Duty.

22.     In or around May of 2016, MIG and Johnston placed their properties on the open market and received and executed sales contracts for those units totaling $355,000.00 to close on all units on May 31, 2016.

23.     Each title company sent WFCA a statute letter request.   Instead of responding to the status letters with the amounts that were due on each unit as required by the Declaration, on May 11, 2016, Defendants filed invalid notices of lis pendens against those properties in WFCA and against properties outside of WFCA.

24.     Even if Defendants had a right to file any lis pendens, they waived that right with the contract they formed with MIG and Johnston.

25.     If a member fails to make those monthly HOA dues the Declaration sets further the procedure to be followed for default at section 23 which states in part:

> In the event of default in the payment of the assessment, the defaulting Condominium Unit Owner shall be obligated to pay interest at the rate of ten percent (10%) per annum on the amount of the assessment from due date thereof, together with all incurred expenses, including attorney's fess, and together with a late charge not to exceed Ten dollars ($10.00) per month.   A suit to obtain a money judgment for unpaid common expenses shall be maintainable without constituting an election of remedies or waiving the lien securing said debt.

26.    Pursuant to the enacted Declaration at section 24(b) each owner

waiver their Homestead rights which states in part:

> Each owner hereby agrees that the Association's lien on a Condominium Unit for
> assessments as hereinbefore described shall be superior to the Homestead
> Exemption provided by Section 38-41-201, C.R.S 1973 and each Owner hereby
> agrees that the acceptance of the Deed or other instrument of conveyance in
> regard to any Condominium Unit within the project shall signify such grantee's
> waiver of the Homestead right granted in said Section of the Colorado statutes.

27.    At no time does the contract vest any ownership right or interest in the

owners unit to WFCA.

28.    WFCA in their relief made no demand for any of assessment due but

past HOA dues.

29.    On or about May 11, 2016, Defendants caused to be filed with the

applicable Clerk and Recorders of the City and County of Denver, State of

Colorado, *Notices of Lis Pendens* affecting the following real properties:

A.    9700 East Iliff Avenue, # E-73, Denver, CO 80231;
B.    9700 East Iliff Avenue, # G-50, Denver, CO 80231 (pending sales contract of
        $85,000);
C.    9700 East Iliff Avenue, # C-33, Denver, CO 80231 (pending sales contract of
        $115,000);
D.    9725 East Harvard Avenue, # W-337, Denver, CO 80231;
E.    9725 East Harvard Avenue, # W-370, Denver, CO 80231 (pending sales
        contract $85,000);
F.    300 South Clinton Street, #9C, Denver, CO 80247;
G.    9995 East Harvard Street, #V-260, Denver, CO 80231 (pending sales contract
        of $70.000); and
H.    5255 Memphis Street, # 910, Denver, CO 80239.

30.    MIG owns all of the above properties or are co-owners in a limited

number of properties, as property located at 9700 East Iliff Avenue, # E-73,

Denver, CO 80231 is co-owned with Kevin Johnston and the property located at 9725 East Harvard Avenue, # W-337, Denver, CO 80231 is co-owned with Debra Weskamp.

31.    That on May 19, 2016, Makeen gave Defendants notice to remove said illegal lis pendens and if the lis pendens caused the Plaintiffs harm and they would seek damages.

32.    Under the controlling case law, <u>Brossia v. Rick Constr., L.T.D. Liab. Co.</u>, 81 P.3d 1126 (Colo.App.2003), a lis pendens is invalid as a matter of law when their original complaint sought only money damages and did not claim any relief affecting the title to real property.

## <u>FIRST CLAIM FOR RELIEF</u>
(Slander of Title)

33.    Plaintiffs incorporate paragraphs 1-30 above as if fully set forth herein.

34.    The elements of the tort of slander of title are (1) slanderous words; (2) falsity; (3) malice; and (4) special damages.  *See*, generally <u>Skyland Metropolitan Dist. v. Mountain West Enterprise, LLC</u>, 184 P.3d 106 (Colo.App.2007).

35.    Improper filing of notices of lis pendens can amount to the tort of slander of title.  Defendants' filing of the notices of lis pendens was without justification in fact and law and, thus, slandered the title to MIG's properties.

36.    Defendants states in their notices of lis pendens that the real property is subject to a pending claim of a fraudulent conveyance pursuant to the Colorado Uniform Fraudulent Transfer Act, 38-8-101, et seq.  There is no such claim asserted.

37.    The existence of malice, which is an attempt to vex, annoy, or injure another party, is a question of fact.  Defendants knew the *Notices of Lis Pendens* on MIG Properties were groundless and invalid, yet they filed the same with the specific intent to vex and annoy the Plaintiffs, as part of their scheme to take Plaintiffs properties or otherwise extract monies and property from them, through the general annoyance of the pending litigation and the specific frustration of being unable to sell their properties.

38.    Special damages involve some effect on the owner's ability to sell the property. At a minimum, the property must be on the market for sale, and the tort must create a cloud upon the title; then the expense of legal proceedings to remove the cloud on title satisfies the damages requirement.

39.    Plaintiffs placed the above properties on the open market and a ready, able and willing buyer contracted to purchase the same.

40.    The failed closing of the sale has been prevented because of Defendants' filing of the *Notices of Lis Pendens* on MIG and Johnston's properties subsequently causing them to suffer loss of profits.

41.     Accordingly, Defendants have committed the tort of slander of title and is liable to Plaintiffs for special damages, including the lose profits on the sale and Plaintiffs attorney fees incurred.

42.     In addition, pursuant to C.R.S. § 38-35-109(3), Defendants are liable to Plaintiffs for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees.

## SECOND CLAIM FOR RELIEF
(Spurious Liens, Statutory Damages)

43.     Plaintiffs incorporate paragraphs 1-41 above as if fully set forth herein.

44.     On or about May 11, 2016, Defendants caused to be filed with the applicable Clerk and Recorders of the City and County of Denver, State of Colorado, *Notices of* affecting MIG and Johnston Properties.

45.     Each of the *Notices of Lis Pendens* constitutes a spurious lien for purposes of the Spurious Liens and Documents Statute, C.R.S. § 38-35-201, *et seq*. For purposes of satisfying the definition of "spurious lien" or "spurious document," a document is "groundless" for which a proponent can advance no rational argument based on evidence or the law to support the claim of a lien.   Westar Holdings P'ship v. Reece, 991 P.2d 328 (Colo.App.1999).

46.    Here, Defendants simply has not even alleged any rational basis for claiming a lien on any one of MIG, Johnston Properties.

47.    In addition, pursuant to C.R.S. § 38-35-109(3), Defendants are liable to Plaintiffs for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees.

48.    Defendants are so liable for statutory minimum or actual damages, whichever is greater. These damages arise with respect to each individual instance of having filed a spurious lien.

### THIRD CLAIM FOR RELIEF
(Violation of the *Civil Rights Act under 42 U.S.C. §§ 1981 and 1982)*

49.    Plaintiffs incorporate paragraphs 1-46 above as if fully set forth herein.

50.  Plaintiffs are members of a protected class in that they are African Americans.

51.  Defendants have arbitrarily, capriciously, and intentionally with the sole purpose of denying Plaintiffs their right to sale their properties because of their race.

52.  Defendants have never used a lis pendens to prevent any other prior member from selling their units.

53. Defendants as retaliation for Plaintiffs legal actions against WFCA placed the notices of lis pendens against Plaintiffs properties knowing that it would prevent them from selling their properties.

54. Defendants discriminated in the terms, conditions, or performance of enforcing and carrying out the contract between the parties.

55. Defendants intentionally interfered with WFCA's performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship because of their race.

56. Defendants have arbitrarily and capriciously denied Plaintiffs the benefits of their ownership interests in their units the same as non whites.

57. Defendants denied Plaintiffs the benefits of such ownership interests on the basis of their race and retaliation

58. Defendants engaged in a severe and pervasive pattern of harassment in an attempt to deprive Plaintiffs of their rights to housing in connection with their ownership of units at WFCA due to their race and retaliation.

59. Defendants' discriminatory conduct was intentional, willful, and/or in reckless disregard of Plaintiffs' federally protected rights, and violates 42 U.S.C 1981 and 1982.

60.     Through its actions, Defendants and its agents and employees, have intentionally discriminated against Plaintiffs based on their race and retaliation by denying them equal terms and conditions of housing.

61.     Through its actions, Defendants and its agents and employees have deprived Plaintiffs of their dignity, humanity and sense of justice and fairness because of their race and retaliation.

62.     Defendants' actions, as described herein with respect to Plaintiffs, constitute a malicious or reckless indifference to Plaintiffs federally protected rights and Defendants was intentionally discriminatory in violation of the federal anti-discrimination laws.

63.     As a direct and proximate result of Defendants' discriminatory conduct in violation of federal and state fair housing laws, Plaintiffs has and continues to suffer harm, including damages and losses, pecuniary and otherwise.

64.     As a direct and proximate result of Defendants violations of 42 U.S.C 1981, Plaintiffs have suffered damages.

65.     Defendants by their conduct, including but not limited to the allegations herein, subjected Plaintiffs to derogatory and humiliating conduct, embarrassed and humiliated them, deprived them of dignity and feelings of self-worth, subjected them to differing terms and conditions of

housing and contract than their non African-American co-members and committed intentional infliction of emotional distress and loss of their good reputation.

66.    As a result of such wrongful action by Defendants, they have breached their Contract with the Plaintiffs, resulting in damages to the Plaintiffs in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
(Breach of Contract)

67.    Plaintiffs incorporate paragraphs 1-64 above as if fully set forth herein.

68.  The Contract was at all relevant times valid, enforceable, and in full force and effect.

69.  The Defendants, knowing of the agreement and the conditions of said contract, and having accepted said conditions, violated said conditions of contract by failing to strictly comply with those conditions of the contract as required, and Plaintiffs suffered damages there from.

70.  The Defendants, knowing of their Declaration, By-laws and rules that form the Contract, and having accepted Plaintiffs as a member, and having been paid by Plaintiffs, and having the benefit of the use thereof, violated said Contract by not complying with those conditions of the contract as required.

71.  Plaintiffs have fully performed all of terms, conditions, covenants, and promises required of it pursuant to the terms of the Contract.

72.  As a result of such wrongful action by Defendants, who have breached their Contract with the Plaintiffs, resulted in damages to the Plaintiffs in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
(Intentional Interference with Contractual Obligations)

73.    Plaintiffs incorporate paragraphs 1-70 above as if fully set forth herein.

74.    Plaintiffs had a valid and binding contract with WFCA.

75.    Defendants should have known or reasonably should have known that placing any notices of lis pendens on the properties would prevent MIG and Johnston from selling their properties and interfere with that contract.

76.    Defendants should have known or reasonably should have known that placing any notices of lis pendens on the properties violated the contract with the parties.

77.    MIG and Johnston informed Defendants that they had a valid contract to purchase and requested that Defendants remove the lis pendens and they failed to do so, thereby causing harm.

78.    Such acts of Defendants interference were improper, causing MIG and Johnston damages for which Defendants should be held liable in an amount to be determined at trial.

79.    Defendants intentionally and improperly interfered with the performance of the contract between WFCA and Plaintiffs by inducing or otherwise causing WFCA not to perform the contract.

80.    As a result of Defendants' actions, Plaintiffs have suffered loss and incurred damages, pecuniary and otherwise.

<u>**SIXTH CLAIM FOR RELIEF**</u>
(Abuse of Process)

81.    Plaintiffs incorporate paragraphs 1-78 above as if fully set forth herein.

82.    A prima facie case for abuse of process includes proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages.    *See* <u>Hewitt v. Rice</u>*,* 154 P.3d 408, 414 (Colo.2007); <u>Trask v. Nozisko</u>, 134 P.3d 544, 553 (Colo.App.2006).

83.    The test of abuse of process is whether a judicial process is used to extort or coerce.[ii] The key to the tort is the improper use of process after its issuance in order to accomplish a purpose for which the process was not

FIRST AMENDED COMPLAINT AND JURY DEMAND                    19

designed.  Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion.

84.   Defendants have intentionally, willfully, and repeatedly harmed MIG, Makeen and Johnston by engaging in a pattern, practice, of filing groundless and frivolous pleadings.

85.   Defendants have used improper use of legal process, and their claims are "sham claims," devoid of factual or legal support and interposed primarily for purposes of harassment.

86.   Defendants filed the notices of lis pendens to harass or to further some other improper objective.

87.   Defendants' notices of lis pendens perpetuated a "sham" filing (meaning baseless in fact or in law) to make Makeen appear as a bully in the court's eyes.

88.   Defendants brought this action not to seek the relief requested in the lawsuit, but rather to require MIG, Makeen and Johnston to spend money litigating.

89.   Defendants brought this legal proceeding in an improper manner to extort, delay, or harass MIG, Makeen and Johnston.

90.   As a result of such wrongful action by Defendants, Plaintiffs suffered damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
(Breach of Duty of Good Faith and Fair Dealing)

91.    Plaintiffs incorporate paragraphs 1-88 above as if fully set forth herein.

92.   Defendants violated their duty by directly or indirectly breaching and/or aiding the other defendants' to breach their fiduciary duties of loyalty, due care, independence, good faith and fair dealing, in connection with the managing and running of WFCA, by failing to apply the terms of the contract equally and fairly as agreed to in the Declaration, bylaws, regulation.

## EIGHTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)

93.    Plaintiffs incorporate paragraphs 1-90 above as if fully set forth herein.

94.    Defendants' intentional and/or reckless conduct of harassment was extreme and/or outrageous that it has caused Makeen and Johnston severe emotional distress.

95.    Defendants' recklessly and/or with the intent placed Plaintiffs in legal action with MIG, Makeen and Johnston by knowingly filing the false and/or illegal notices of lis pendens.

96.   When Defendants filed the notices of lis pendens against MIG and Johnston properties as attorneys they knew or reasonable should have known that they were illegal and/or invalid.

97.   Defendants recklessly or with the intent that placing the notices of lis pendens upon the properties would prevent MIG and Johnston from selling and/or obtaining a loan from MIG to pay the judgment.

98.   Defendants placed notices of lis pendens on $1,700,000.00 worth of real property for a $6,000.00 money claim intentional and/or reckless to cause Makeen, Johnston and MIG pain and suffering.

99.   When you view the course of conduct of Defendants in its totality of their conduct you must find this conduct to be outrageous.

## NINTH CLAIM FOR RELIEF
(Civil Conspiracy, Unlawful Acts, against Hunter and Lowe)

100.   Plaintiffs incorporate paragraphs 1-99 above as if fully set forth herein.

101.   Hunter and Lowe have colluded to engage in the collective objectives of (a) extracting underserved money and real property from Makeen, MIG, and Johnston (b) and causing Makeen, MIG, and Johnston undue and undeserved financial, physical and emotional harm, all unlawful purposes.

102.   Hunter and Lowe reached a meeting of the minds as to both the objectives and/or the courses of action to be taken to reach those objectives.

103.   The filing of the illegal notice of lis penden was done for the sole

propose of preventing Plaintiffs from selling their properties where Lowe

had filed the same illegal notice of lis penden in Denver District Court

Makeen v Hailey case number 2015cv253 and the court had held that they

were invalid and released them.

104.   In pursuing the courses of actions, Hunter and Lowe engaged in one

or more unlawful acts. Specifically, as to WFCA, Hunter and Lowe, to bring

false and unlawful claims against Makeen, MIG, Johnston alleging that they

owed outstanding HOA dues, while applying long sharking interest rates on

the alleged outstanding balance. The amounts alleged are in violation of

*C.R.S. §* 38-33.3-209.5(1)(a) where WFCA failed to maintain accurate and

complete accounting records and they have admitted to such.

105.   Additionally Hunter and Lowe colluded to engage as attorneys

knowing the law to violate Makeen, MIG, Johnston Constitutionally rights.

106.   Further, such conduct, and as to Lowe specifically, in addition to

violating specific criminal prohibitions against, perjury, and false swearing,

all of such conduct constituted substantial, multiple and continuing unlawful

violations of stalking.

107.   As a direct and proximate result of the foregoing conspiracy, Makeen,

MIG, Johnston has suffered, and continues to suffer, severe financial,

physical and psychological harm.

108.   Hunter and Lowe are, therefore, jointly and severally liable to

Makeen, MIG, Johnston for damages, including attorney fees, as the same

may be enhanced under applicable law.

## IV.      PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.      Issue an order declaring each lis pendens a as slander of title and

invalid and enter damages pursuant C.R.S. § 38-35-109(3) in the amount of

$550,000.00 for claim one;

b.      Issue an order declaring each lis pendens as a spurious document and

invalid and enter damages pursuant C.R.S. § 38-35-109(3) in the amount of

$550,000.00 for claim two;

c.      Issue an order permanently enjoining Defendants from filing *any* lis

pendens or other instrument affecting real property belonging to MIG,

Makeen and Johnston;

d.      Issue a permanent injunction directing Defendants and their directors,

officers, agents, employees, successors and all other persons in active

concert or participation with them to take affirmative steps, including fair

housing training, to remedy the effects of the illegal and discriminatory conduct described herein and to prevent similar occurrences in the future;

e.      Issue an declaratory judgment finding that Hunter'' actions, as outlined above, constituted a tortious interference with regard to Plaintiffs contract with WFCA

f.      Award compensatory damages to Plaintiffs in an amount to be determined by the jury to fully compensate him for the economic loss, humiliation, embarrassment and emotional distress caused by the conduct of Defendants as alleged herein;

g.      Award punitive damages to Plaintiff in an amount to be determined by the jury for the purpose of punishing Defendants for the willful, wanton and reckless conduct alleged herein and to effectively deter similar conduct in the future;

h.      An order declaring that the Defendants have violated its contract;

i.      An order declaring that the Defendants have violated *42 U.S.C. § 1981 and 42 U.S.C. § 1982 and* award damages

j.      Award compensatory and nominal damages

k.      Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of Plaintiffs civil and other rights;

l.    Enter an injunctive judgment that the practices complained of herein are unlawful and in violation of the contract;

m.    Award Plaintiffs the cost of this action together with expert witness fees and reasonable attorney's fees and costs;

n.    Enter prejudgment interest;

o.    Grant such other and further relief as the Court deems just and proper

p.    Grant such other equitable relief as this Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial.

Respectfully submitted this 20th day June, 2016

/s/ Akeem A. Makeen
Akeem A. Makeen
3312 South Tulare Circle
Denver, Colorado  80231
Telephone: (720) 329-8081
Email: makeen@comcast.net


/s/ Kevin Johnston
Kevin Johnston
P.O. Box 370821
Denver, Colorado  80237

*CERTIFICATE OF SERVICE*

I certify that on June 20, 2016 a true and accurate copy of **FIRST
AMENDED COMPLAINT AND JURY DEMAND** was served on the
other party by: Email

> Horace A. Lowe, Atty. No. 17463
> The Law Office of Horace A. Lowe
> 925 S. Niagara St., Ste. 600
> Denver, Colorado 80224-1604
> Phone Number: 720-458-5900 or 720-737-5410
> hlowe@halolaw.com

Charlene Hunter
1547 Gaylord St Ste 206
Denver, CO 80206
chunter@hunterlawlls.com

> ____/s/ Akeem A. Makeen____
> Akeem A. Makeen
> 3312 S Tulare Cir
> Denver, CO 80231
> (720) 329-8081
> makeen@comcast.net